**John C. GAGER**

v.

**The UNITED STATES.**

**No. 50389.**

United States Court of Claims.
Nov. 30, 1954.

John C. Gager, pro se.

John R. Franklin, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff was, in December 1945, a commissioned officer in the United States Navy on active duty. En route to the United States for separation from active duty, he stopped at Noumea, New Caledonia. Surplus war equipment was there being sold by the Government's Foreign Liquidation Commission. The plaintiff selected two steel warehouses which had never been uncrated and some 12 tons of corrugated sheet metal. The plaintiff's wife and her mother and stepfather, a Mr. Glavish, were in Auckland, New Zealand, about 1,000 miles away

from Noumea. The plaintiff and the Government's selling agent agreed on a price of $1,000 for the material to be delivered f. o. b. shipside, Auckland, New Zealand. The plaintiff paid the $1,000 and received several copies of a "shipping ticket" showing the material, the price, and the f. o. b. provisions. This document was undated, but was made about December 5, 1945.

Arrangements were made to take the materials to Auckland aboard a United States Naval vessel, the LST 275 which was sailing immediately. The vessel's skipper was willing to carry the shipment which would be useful for ballast. The plaintiff, prudently, saw to it that the right goods were placed in the right ship, so that they would not get lost in the general confusion of breaking up camp and going home, which was the objective of the Americans in Noumea.

Because the plaintiff was going to the United States and his wife was in Auckland, the shipping ticket showed that the goods were to be shipped to his wife, Mrs. J. C. Gager, in Auckland. The plaintiff gave an envelope containing a description of the materials and a copy of the shipping ticket to the skipper of the LST who agreed, as a personal accommodation to the plaintiff, to give them to the plaintiff's wife in Auckland.

The plaintiff resumed his journey to the United States. The goods were carried promptly to Auckland, arriving there on December 12. The local firm of Henderson and MacFarlane, Ltd., were the agents for the United States Joint Purchasing Board at Auckland, and handled the entry of LST 275 there. That firm, as well as the United States officials there, had apparently never known of an instance where a service ship had carried a commercial cargo for an individual. They did not construe the "f. o. b shipside, Auckland" as indicating that no freight charge was to be paid, or they thought that if it did mean that, there was some irregularity about it. They therefore computed a freight charge at commercial rates, which came to $918.76. A customs duty somewhat larger than

the freight charge was also imposed by New Zealand. Mrs. Gager did not pay these charges. Couldrey & Company, a local shipping and transit firm, acting as agents for Henderson and MacFarlane and also, to some extent at least, for Mrs. Gager, moved the goods to a vacant lot owned by the New Zealand Harbor Board and made a warehouse entry to cover the goods.

Mrs. Gager cabled the plaintiff in the United States, advising him that the goods were being held for freight charges. He received the cablegram on January 2, 1946. He contacted the Army, the State Department, and the Department of Commerce in an effort to get the shipment released. He obtained employment on a commercial ship which was sailing to New Zealand and arrived in Auckland in March 1946. He went to Henderson and MacFarlane, but they still refused to release the shipment. He went to the American officials at Auckland and was told that they would request Henderson and MacFarlane to release the shipment. He then went to the customs officials to inquire whether the nonpayment of the customs duty, amounting to $953.70, was holding up delivery of his shipment. The customs officials advised plaintiff that they were not pressing a claim for payment of the duty at that time and suggested that plaintiff take the matter up with them again after he had settled the freight charge dispute.

Plaintiff's stopover in Auckland was a matter of some two days and he was forced to leave on April 1, 1946, without obtaining the release of his property.

Sometime in April or May 1946, Mrs. Gager had to take the last "war bride" vessel sailing to the United States. The goods had not yet been released and the Joint Purchasing Board officials were still insisting that freight charges must be paid. Inasmuch as Mrs. Gager could not be in Auckland to continue pressing for the release of the goods, nor would she be there to receive them if they should be released, she sold the property to her stepfather, Mr. J. J. Glavish for 300 New Zealand pounds, or $977.40.

The date of this sale is uncertain, but it was sometime in April or May, 1946.

When Mr. Glavish acquired the property, storage charges and customs duty amounted to $1,211.98, and the Government was still demanding payment of the freight charge of $918.76. Couldrey & Company advised Mr. Glavish of these charges and the fact that the property was deteriorating in the weather. Mr. Glavish was given ten days to decide what he was going to do about the property. With the permission of the Joint Purchasing Board, Mr. Glavish arranged a sale to the Marist Old Boyd Football Club of enough of the materials to build two huts, for $3,909.60, and on June 5, 1946, used the money to pay the charges against the property. When the club had built its huts there was material left over and Mr. Glavish demanded its return and sued the club to enforce his demand. The leftover material was worth some $1,400. We do not know the outcome of the suit.

Henderson and MacFarlane were finally instructed by the American authorities to refund the freight charges, and they were refunded to Mr. Glavish, who had paid them, about September 1, 1947.

Consideration of the case has been made difficult by the fact that Mrs. Gager, although available, was not called as a witness. It seems that she and the plaintiff have separated.

We think the plaintiff was the owner of the property in question. There was, apparently, some plan whereby his wife and another person were to acquire an interest in it, and it was to be used to start some kind of a business in New Zealand. But the plaintiff paid for the property, and we think no one else had acquired an interest in it before it was sold by Mrs. Gager.

The plaintiff says that his wife did not sell the property to Mr. Glavish. We are satisfied that she did. The plaintiff, since he was leaving for the United States immediately after he bought the property, must have intended to give his wife considerable authority to deal with the property. Since she was leaving New Zealand it would have been reckless for her to have left the property undisposed of, deteriorating in the weather and accumulating storage charges.

The plaintiff's contract of purchase entitled him to have the goods carried to Auckland without any charge against him for freight. The arrangement was unusual, but was not illegal, as would seem to be proved by the fact that, after much deliberation, the freight charges that were collected were refunded. The fact that the arrangement was unusual, was outside the normal routine, was the cause of the difficulty. When goods arrived, consigned to a private person, and with papers indicating that the consignor had not paid any freight, it quite naturally, looked to Henderson and MacFarlane as if the consignee should pay the freight. It was not improper for them to take that position, and leave the decision to their principals, the United States Government authorities. Those authorities investigated the facts, considered the question, and, at last, refunded the freight money to the person who had paid it.

The assertion of the freight charge was contrary to the provisions of the plaintiff's contract of purchase, and the detention of the goods for that charge was a breach of contract. As a consequence of the breach of contract, the goods could not be sold to advantage or otherwise used, and in view of Mrs. Gager's imminent departure, her sale of them to Mr. Glavish for what she could get for them was not unreasonable. She got $977.40 and was relieved of paying customs duties of $953.70. She was also relieved of paying storage charges, but it is probable that, if the goods had not been wrongfully detained at the Government's behest, storage charges would not have been incurred.

We have found that the property in question had a value in New Zealand of about $5,000. Because of the Government's breach of contract, the plaintiff got only $977.40 in cash and relief from a customs charge of $953.70. He is en-

titled to recover the difference between the sum of these items and $5,000, which difference is $3,068.90.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.